Delbert Forrest BROWN, Appellant,

v.

STATE of Alaska, Appellee.

No. 134.

Supreme Court of Alaska.

June 7, 1962.

Rehearing Denied July 16, 1962.

Delbert Forrest Brown, appellant, in pro. per.

Jack O'Hair Asher, Dist. Atty., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The defendant-appellant, Delbert Forrest Brown, has prosecuted his own appeal from convictions of simple assault, assault with a dangerous weapon and possession of a concealable weapon by a person previously convicted of the offense of assault with a dangerous weapon.

Defendant resided across the bay a short distance from Yakutat, Alaska, on November 27, 1960. His occupation was that of guide, construction worker and in his spare time he cultivated an oyster bed located in the bay near his property. Two cabins were located on property owned or controlled by him. The larger cabin was occupied by defendant and the smaller by Stella Adams, his housekeeper and fiance whom he intended to marry as soon as they were "able to get around to it".

On the date mentioned defendant and Stella Adams boated across the bay to Yakutat where they drank home brew at the home of Ray Smith in the company of Smith and Clarence and Ethel Milton. Sometime after 3 p. m. Clarence and Ethel Milton accepted defendant's invitation to come to his home and have a few drinks. Defendant, Stella Adams and the Miltons then boated back across the bay in defendant's boat and repaired to the cabin occupied by Stella Adams to continue their drinking.

Some time after dark defendant began to press Clarence Milton for information as to why Harvey Milton, Chief of Police of Yakutat, Clarence's brother, was attempting to oppress defendant. According to Clarence Milton's testimony, he denied any knowledge of the situation. This did not satisfy defendant and later in the evening, according to Milton, defendant threatened to shoot him with a loaded revolver unless he gave the information demanded. When threats failed to produce the information defendant became angry and, using the revolver as a club, struck Milton about the head repeatedly until he fell to the floor, according to Milton. It appears to have been established that Clarence's wife, Ethel Milton, and Stella Adams were present when the assault occurred.

Defendant's testimony at the trial was that he used the revolver as a club only to the extent necessary to subdue Clarence Milton who was attacking him with a hunting knife.

Subsequent to the assault and before the trial commenced in Juneau, Alaska, on April 19, 1961, defendant and Stella Adams were married.

The state's case was concluded during the morning of Friday, April 21st. Counsel for defendant then put on four witnesses for the defense and requested that the trial be continued until the following Monday. Counsel advised the court that she had been attempting to locate Stella Adams Brown in Juneau through the state police to persuade her to appear in the case as a witness for defendant. Since these efforts had failed a subpoena was caused to be issued for her appearance, but she had not yet been served. Mrs. Brown's testimony on defendant's behalf was stated by his counsel to be very material to the defense and failure to obtain it would prejudice his case. Counsel stated that she did not want to put defendant on the stand until Mrs. Brown's testimony had been received. Accordingly, some time during the morning of Friday, April 21st, the court excused the jury and

adjourned until 10 o'clock Monday, April 24, 1961.

The transcript of the proceedings indicates, however, that the court reconvened at 2:45 p. m. on the same day, Friday, April 21, 1961, for the purpose of considering defendant's motion for an order to fix bond to hold Stella Adams Brown as a material witness. The record reveals that the District Attorney, Mrs. Mildred Hermann, counsel for defendant, and Stella Adams Brown were in court but that defendant was not in court. Defendant states that he was confined in jail at the time of the hearing and this is not denied by the state.

Prior to considering the motion, the court advised that it would be necessary to determine whether Stella Adams Brown would consent to waive her privilege not to be a witness under the provisions of section 66–13–58 A.C.L.A.[1] Counsel for defendant and the District Attorney both agreed that Mrs. Brown should be sworn and questioned by the court and counsel in this respect. After the court had explained the nature of her privilege, Mrs. Brown was sworn and the following proceedings took place:

"THE COURT: Mrs. Brown, as you know, the trial is in process under which your husband, Delbert Brown, is accused by an indictment or indictments returned by the Grand Jury of certain crimes including Assault with a Dangerous Weapon, and another crime of having a concealed weapon, when he had previously been convicted of assault and battery, and Mrs. Hermann has, as you know, issued a subpoena which is a document that requires you to come before the Court to testify and I believe that subpoena has been served on you; has it not? Would you speak loudly, please?

"STELLA BROWN: Yes.

"THE COURT: Mrs. Hermann has also asked that bond be fixed so that you would be available to testify on Monday morning at the trial. Now, under our law, since you are the wife of the defendant, you cannot be compelled to testify, that is, if you testify it must be with your consent. You understand what I mean by that? What is your wish; do you consent to testify?

"STELLA BROWN: I'd rather not.

"THE COURT: Well, it is necessary, Mrs. Brown, that you definitely state. By saying you'd rather not, you still leave it in midstream as far as I am concerned. See what I mean?

"STELLA BROWN: Yes.

"THE COURT: So I need to know definitely whether you will or will not consent to testify.

"STELLA BROWN: I will not consent.

"THE COURT: You will not consent to testify. I see. You have heard the testimony. Mr. Asher, do you have any questions?

"MR. ASHER: No, Your Honor.

"THE COURT: Mrs. Hermann, if you would like to ask Mrs. Brown any questions, you may do so.

"MRS. HERMANN: No, if she does not consent, she does not consent."

Thereupon, at the suggestion of the District Attorney, counsel for defendant agreed to withdraw the motion. Upon being questioned by the court as to whether she de-

1. Section 66–13–58 A.C.L.A.1949 states: "Husband or wife as witness. That in all criminal actions where the husband is the party accused the wife shall be a competent witness, and when the wife is the party accused the husband shall be a competent witness; but neither husband nor wife, in such cases, shall be compelled or allowed to testify in such case unless by consent of both of them; Provided, That in all cases of personal violence upon either by the other, the injured party, husband or wife, shall be allowed to testify against the other. [CLA 1913, § 2259; CLA 1933, § 5349.]"

sired that the subpoena remain in effect, counsel for defendant stated that she did not. The court then ordered that the subpoena be quashed and Mrs. Brown released.

Defendant claims that his constitutional rights were violated because he was not permitted to be present during the hearing just described. He insists that his defense was prejudiced by his absence from the courtroom because, if he had been present, "his wife would have been calmed and reassured in her mind and would have consented to testify" and that as an eye witness she could have testified that defendant acted solely in self-defense.

■ At the outset it must be noticed that our Criminal Rule 38 provides that the defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict.[2] The sentence quoted below is identical in wording with the first sentence of Rule 43 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Federal authorities will therefore be considered in its interpretation.

The above-mentioned requirement has been said by the Advisory Committee to be merely a restatement of existing law,[3] based on Lewis v. United States[4] and Diaz v. United States,[5] and to have no application

to hearings on motions made prior to or after trial.[6]

In Lewis v. United States the record failed to indicate that defendant was present when his counsel and the district attorney exercised challenges to the jury list. The court stated at 146 U.S. 370, 13 S.Ct. 137, 36 L.Ed. 1012:

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has at times, and in the cases of misdemeanors, been somewhat relaxed, yet in felonies it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial."

Diaz v. United States recognizes that where the offense is not capital and the accused is not in custody, his voluntary absence after the trial has begun amounts to a waiver.[7]

The right to be personally present during the trial in federal jurisdictions is grounded principally in the Sixth Amendment to the United States Constitution.[8] Article I, section 11 of the Alaska Constitution contains almost identical provisions.[9] The federal

---

2. Criminal Rule 38 states in pertinent part: "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules."

3. 4 Barron & Holtzoff, Federal Practice & Procedure § 2451 (1951).

4. 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

5. 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

6. United States v. Lynch, 132 F.2d 111 (3d Cir. 1942), cert. denied, 318 U.S. 777, 63 S.Ct. 831, 87 L.Ed. 1146 (1943).

7. See also Parker v. United States, 184 F.2d 488 (4th Cir. 1950), an income tax evasion prosecution where the defendant was on bail. His *involuntary* absence after the trial had begun was held to have

been a waiver of his right to be present. But see Greenberg v. United States, 280 F.2d 472 (1st Cir. 1960), where the defendant's absence was not shown by the government to have been "voluntary" and was therefore held not to have been a waiver of his right to be present.

8. Echert v. United States, 188 F.2d 336, 339, 26 A.L.R.2d 752 (8th Cir. 1951).

9. Article I, § 11 states:
"In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have com-

authorities reviewed convince us that those courts have carefully protected the right of an accused to be present at every stage of the trial. Waiver of this right has been found in some instances that might appear to be covered by Rule 43, Federal Rules of Criminal Procedure where the accused's absence was not entirely voluntary,[10] but in no case that has come to our attention has the right been held to have been waived where a felony was being prosecuted and the accused was in custody.

■ In the case before us the accused was in custody and was being tried on several felony indictments. The trial had been adjourned at the request of defendant's counsel for the specific purpose of allowing additional time to locate his wife who had witnessed the alleged assault and whose testimony was claimed to be very material to his defense. After the jury had been excused for the week end and defendant had been returned to jail, the court then reconvened to determine whether his wife, who had been brought before the court, should be detained as a material witness for the defense. The defendant had not waived his right to be present; in fact he did not know that the hearing was being held. It is true that his attorney was present. But the proceeding that occurred appears to us to have been of such a nature that defendant himself should have been present in person. We do not believe that his attorney's failure to insist that he be present can be held to be a waiver under the circumstances.

Defendant's wife had come to Juneau from a small frontier community. She was obviously reluctant to appear in court. Immediately after having been handed a subpoena, she was delivered into the courtroom by an officer of the state police. It is not at all unlikely that she was apprehensive over her sudden change in circumstances. After having been sworn and placed on the witness stand she was advised by the court that she could not be held or required to testify without her consent. When asked if she would consent to testify, her first reply was, "I'd rather not." It was only after the court required her to answer definitely that she stated, "I will not consent."

What her answer would have been if the defendant, her husband, had been present in the courtroom at the time is open to conjecture. His argument that if he had been present his wife would have been calmed and reassured and would have agreed to testify is not unreasonable. If he had been present he might have suggested a line of questioning to his attorney, or as is suggested in Lewis v. United States,[11] may have questioned the potential witness himself. By being involuntarily excluded from the courtroom he was denied any of these possible advantages.

■ We believe that under the circumstances of this case, appellant's presence was required by rule 38 and that his right to be present was as vital to his defense as his specific constitutional right to be confronted with the witnesses against him.

pulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

10. Echert v. United States, supra note 8, where because of a misunderstanding the defendants arrived at the trial after the jury had been impaneled. Their counsel had consented to proceeding in their absence. After the defendants arrived their rights under rule 43 were carefully explained by the court and each expressed satisfaction with the jury that had been selected and specifically waived any objection. Parker v. United States, supra note 7, where the defendant was injured during an adjournment of his trial, was

absent during a part of the trial and raised no objection until some time after he had commenced serving his sentence. Johnson v. United States, 318 U.S. 189, 201, 63 S.Ct. 549, 87 L.Ed. 704, 714 (1943), where defendant was excluded from the courtroom while counsel argued the propriety of a question asked him on cross-examination, was advised of his privilege not to answer on his return, claimed the privilege not to answer and took no exception to his temporary exclusion. It was held defendant could not possibly have been prejudiced.

11. Note 4, supra.

The state argues that the hearing was not a "stage of the trial" within the meaning of rule 38—that the hearing could have occurred prior to trial. This is possible, but not likely in the usual course of proceedings where subpoenaed witnesses report to the court. However, all we are concerned with here is that the hearing was in fact held during a stage of the trial reserved for the presentation of evidence for the defense; that the defendant himself did not waive his right to be present; that he was in custody and not voluntarily absent; and that his case may have been prejudiced, in that if he had been present his wife might not have invoked her privilege.

■ Defendant also contends that the state violated the provisions of the husband and wife privilege by subpoenaing his wife Stella Adams Brown and compelling her to testify before the grand jury.[12]

There is no merit to this argument. A reading of the statute makes it abundantly clear that it applies only to criminal actions. Section 66–1–3 A.C.L.A.1949 defines a criminal action as a "proceeding by which a person is tried and punished for the commission of a crime". A grand jury proceeding is not a criminal action within the meaning of section 66–13–58. It is merely an inquiry to determine whether there is probable cause to believe the accused is guilty of the offense charged.[13]

Defendant next argues that the arresting officer's action in returning to the cabin occupied by Stella Adams the morning following the assault without a search warrant and obtaining from her the gun used in the assault amounted to an illegal search and seizure, violating his rights under article I, section 14 of the Alaska Constitution.[14]

The uncontradicted testimony of Officer Personett on cross-examination on this point was as follows:

"Q. [By appellant's counsel] You asked her for them?

"A. I asked her if she knew where they were. She—Where the gun was. She said, 'Yes', and went to the bedroom portion of the cabin to get them. She returned with it and handed it to me. I asked her if she had any objection if I took the gun and the shells with me. She said, 'No,' that she had no use for them whatsoever."

■ The best definition of what constitutes search and seizure that has come to our attention is contained in People v. West[15] where the court said:

" * * * the term [search] implies some exploratory investigation or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive or accomplished by force, and it has been held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a "search". A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender."

■ We are of the opinion that the facts in this case clearly show that no search or seizure occurred. As far as the record

12. Section 66–13–58 A.C.L.A.1949, quoted in note 1, supra.

13. United States v. Beaver, 8 Alaska 83 (D.Alaska 1929), where the identical question was raised on identical facts.

14. Article I, § 14 of the Alaska Constitution states:
  "The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

15. 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956).

discloses the officer never entered the cabin, which, in any event, was Stella Adams' private dwelling.

The judgment of conviction is set aside and the case is remanded for a new trial.