Stephen James WELTZ, Douglas Carl Williams, Stephen James Carlin and Erick Guy Williams, Appellants,

v.

STATE of Alaska, Appellee.

No. 758.

Supreme Court of Alaska.

Sept. 14, 1967.

William B. Emmal and George B. Mc-Nabb, Jr., Fairbanks, for appellants.

Jay Hodges, Dist. Atty., and William J. Hurley, Jr., Asst. Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

OPINION

RABINOWITZ, Justice.

Appellants were jointly tried and convicted of the crimes of rape.[1] Judgments and commitments were entered under which appellants received sentences of three years imprisonment. In their appeal to this court, appellants contend they should be granted a new trial because of the superior court's failure to suppress,[2] and its subsequent admission into evidence of the state's exhibit A.[3] Appellants' primary argument is that exhibit A was obtained by an illegal search and seizure in violation of the Alaska constitution and the Constitution of the United States of America.[4] We are of the opinion that the trial court correctly determined appellants' motion to suppress

1. Appellants were charged with violations of AS 11.15.120 of our Criminal Code which, in part, defines rape as "carnal knowledge of a female person, forcibly and against her will * * *."

2. Rule 37(c), Rules of Criminal Procedure, provides:

Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the judge or magistrate in the judicial district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that:
(1) the property was illegally seized without warrant, or
(2) the warrant is insufficient on its face, or
(3) the property seized is not that described in the warrant, or
(4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or
(5) the warrant was illegally executed.

The judge or . magistrate shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the judicial district where the trial

is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.

3. Exhibit A was a one-sentence note which bore the victim's signature. The text of the note reads as follows: "I was willing to go in the first place & [vernacular for sexual intercourse]."

4. Art. I, section 14 of the constitution of Alaska provides:

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not· be violated. ·No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The fourth amendment to the United States Constitution states that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.

Mapp v. Ohio, 367 U.S. 643, 654–655, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 1089–1090 (1961), made applicable the search and seizure provisions of the fourth amendment (and the federal exclusionary rule) to state criminal prosecutions through the 14th amendment.

and objection to the admissibility of exhibit A. We affirm the convictions which were entered below.

As part of the state's case, the prosecutrix gave evidence that before appellants would agree to drive her back to Fairbanks they made her write out and sign exhibit A. Specifically, she testified that:

[I] was in the back seat and they * * they made me sign this piece of paper that said that I had willfully got in the car and that I had willfully * * * willfully let them. * * *

&ast; &ast; &ast; &ast; &ast;

They just told me what to write.

The prosecutrix also informed the jury that appellants said, "[T]hey'd take me out in the country and make me take off my clothes and walk back to town" unless she wrote the note.[5]

Prior to the taking of any testimony at the trial, appellants timely moved, pursuant to Criminal Rule 37(c), to suppress the note. At the hearing which was held in regard to this motion, the state introduced the testimony of Sergeant Schlichtig of the Alaska State Troopers. This officer related that while he was on duty during the early morning hours of August 14, 1965, appellant Stephen Weltz and his father Ralph Weltz were present at the police station. At that time the police were conducting an investigation of the alleged rapes of the prosecutrix. At one point during this early morning investigation, Officer Schlichtig left the police kitchen where appellant Weltz and his father were talking. Officer Schlichtig departed in order to speak to appellant Douglas Williams. During the course of the officer's conversation with appellant Douglas Williams, he learned for the first time of the existence of the note (exhibit A).[6]

After obtaining this information, Officer Schlichtig testified that he then

returned to the kitchen, I advised them I knew of the note and I requested the note and uh—at that time I did not know that it had changed hands and Mr. Weltz asked me, 'What note?', I repeated the gist of the note as it was given to me and Mr. Weltz [appellant Stephen Weltz's father] handed it to me.[7]

As part of their presentation at the suppression hearing, appellants offered the testimony of Ralph Weltz. According to this witness, he had a private discussion with his son at the police station and

[a]fter the discussion, why he told me about this note and took it out of his billfold and I said, 'Let me see it,' and * * * he showed it to me and I took it. And I folded it up and put it in my hand and I went over and sat down.

Ralph Weltz further testified that the following events then occurred:

Mr. Schlichtig come in the office and said, 'Where's the note,' * * *.

&ast; &ast; &ast; &ast; &ast; &ast;

[c]ame through the door, opened the door up and walked in and stood at the end of the table and asked * * * where the note was, and I said, 'What note?', and I had it folded up in my hand, with my hands on the table and he just reached down and grabbed it out, and I

5. The prosecutrix also related the text of the note and other details surrounding the writing and signing of it. Appellants' counsel objected to this line of testimony on the grounds that it was inadmissible under the 4th and 14th amendments and the best-evidence rule. These objections were overruled and are not now questioned in this appeal.

6. Officer Schlichtig's testimony is that appellant Douglas Williams "[S]tated that the girl had written a note for the uh—boys and that uh—to the best of his knowledge, Steve Weltz had the note."

7. The officer also testified that he had not seen the note prior to the time that appellant Weltz's father handed it to him, and at the time this occurred appellant Weltz was not under arrest.

was amazed that he even knew which hand it was in.[8]

This witness also stated that at that time it was his intention to keep the note in order to consult with an attorney. Appellant Stephen Weltz's version of what occurred at the city police station that morning is in substantial agreement with his father's testimony.[9] At the conclusion of the hearing the trial judge denied appellants' motion to suppress.[10]

We are of the view that the trial court's decision to admit the note is sustainable on two independent grounds. Upon consideration of the record made at the suppression hearing, we are of the opinion that no search and seizure occurred.[11] Admittedly, Officer Schlichtig's version of the circumstances under which he obtained possession of the note differed from that which was given by appellant Weltz and his father. Resolution of such conflicts in testimony and related issues of credibility are within the trial judge's province. And as we have previously noted, the trial judge, in his oral decision, stated that he believed Officer Schlichtig.[12] Our review of the record convinces us that the trial court, as trier of the fact for purposes of the suppression hearing, reasonably could have concluded that Officer Schlichtig's account of how he obtained possession of the note

was truthful and accurate. Given such a conclusion, it follows that the facts demonstrate that possession of the note was not obtained by an illegal search or seizure. What appears is that upon request the note was voluntarily delivered to Officer Schlichtig by appellant Stephen Weltz's father without objection from appellant Stephen Weltz or from his father.

A second basis underlying our decision to uphold the superior court's denial of appellants' motion to suppress is our belief that under the circumstances Officer Schlichtig's actions were reasonable. Assuming the accounts given by appellant Weltz and his father were accurate, we are, nevertheless, of the opinion that the note was not obtained as a result of an unreasonable search and seizure.[13]

In Brown v. State,[14] we adopted the following definition of the term "search":

A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search'.[15]

Here there was no exploratory investigation, no invasion or quest by Officer

---

8. Mr. Weltz also testified that it was his recollection that he

> had it folded up in my hand and I had part of it exposed and he just reached down and took it out and it just amazed me that he even knew what hand I had it in.

9. Appellant Weltz testified that Officer Schlichtig came into the room where he had been talking with his father and said: 'We know about the note,' and * * * dad had said at that time, 'What note?', and he reached down in his hand and * * * removed it from his hand.

Later in his testimony appellant Weltz stated that the officer looked "kinda mad or something" when he came into the room.

10. In the course of rendering his oral decision on appellants' motion to suppress, the trial judge indicated that he believed

Officer Schlichtig, and that in his opinion the officer acted reasonably in obtaining possession of the note under the particular circumstances.

11. Compare Brown v. State, 372 P.2d 785, 790 (Alaska 1962), where the uncontradicted testimony of an officer established that an illegal search and seizure had not taken place.

12. Supra note 10.

13. As to the applicable constitutional provision, see note 4, supra.

14. 372 P.2d 785, 790 (Alaska 1962).

15. This definition was taken from People v. West, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956). See Ker v. State of California, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 744 (1963).

Schlichtig. According to appellants' version, Officer Schlichtig merely reached down and took the partially exposed note from Ralph Weltz's folded hand at a time when appellant Stephen Weltz and his father were voluntarily present at the police station in connection with the investigation of the alleged rapes.[16] Again, assuming the truth of appellants' account of the manner by which Officer Schlichtig obtained possession of the note, we hold that no search took place.[17]

In *Brown*[18] we also had occasion to define the term "seizure." There we said, "A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender." Taking as our relevant data only those facts testified to by appellant Stephen Weltz and his father, the record then demonstrates that the note came into Officer Schlichtig's possession by virtue of a seizure.

In Goss v. State,[19] we said that the evidence there in controversy would be inadmissible if the search and seizure were unreasonable under either the Constitution of the United States or the Alaska constitution. In regard to ascertaining whether an unreasonable search or seizure had occurred, we said in Ellison v. State[20] that:

There seems to be no exact formula for the determination of reasonableness in connection with a search and seizure and so each case must be decided on its own facts and circumstances.[21]

Assuming the record shows that Officer Schlichtig seized the note, we hold that such seizure was reasonable and therefore not violative of either the United States or Alaska's constitutional prohibitions against unreasonable searches and seizures.

■ The primary purpose of these constitutional provisions is the protection of "personal privacy and dignity against unwarranted intrusion by the State."[22] Al-

16. Supra note 8.

17. In oral argument appellants' counsel conceded that Officer Schlichtig's conduct at the time in question did not constitute a search.

Authorities can be found to the effect that absent any element of search the constitutional proscriptions under discussion are inapplicable. See Patrick v. State, 227 A.2d 486, 490 (Del.1967); People v. Reason, 52 Misc.2d 425, 276 N.Y.S.2d 196, 204 (1966); State v. Allred, 16 Utah 2d 41, 395 P.2d 535 (1964).

In United States v. Barone, 330 F.2d 543, 544 (2d Cir. 1964) (citations omitted), Chief Judge Lumbard wrote, "That which is in plain view is not the produce of a search."

Similarly in Scott v. United States, 228 A.2d 637 (D.C.App.1967) (citations omitted), the court said:

Appellant says the initial observation of the goods in the trash can was illegal, citing Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660 (1957). In that case the trash can was under the porch within the curtilage, the contraband was hidden and the search was held illegal. But the mere observation of objects in plain view does not constitute an illegal search. * * * 'It has been said * * * that it is not

a search to observe that which is open and patent * * * a search warrant is not necessary where the object sought by the search is visible, open and obvious to anyone within a reasonable distance employing his eyes.'

18. Brown v. State, 372 P.2d 785, 790 (Alaska 1962).

19. 390 P.2d 220, 223 (Alaska 1964).

20. 383 P.2d 716, 719 (Alaska 1963) (footnote omitted).

21. Accord, Merrill v. State, 423 P.2d 686, 699–700 (Alaska 1967). The applicable constitutional provisions reach only unreasonable searches and seizures. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, 1405 (1947).

22. Schmerber v. State of California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L. Ed.2d 908, 917 (1966). In that case the supreme court went on to say "In Wolf [Wolf v. People of State of Colo., 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782] we recognized '[t]he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" See Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, 790 (1967).

though not determinative of the issue, we note that under either Officer Schlichtig's version or appellants' version no arbitrary intrusion, or invasion of the privacy of appellant Stephen Weltz occurred. As to appellant Stephen Weltz's father, Ralph Weltz, the record demonstrates that he was permitted, and voluntarily agreed, to accompany his son to the police station during the initial stages of the police investigation into the purported rapes. When Officer Schlichtig seized the note from the hand of Ralph Weltz, we deem it significant that the following events had already transpired: The police were engaged in conducting an investigation of the rapes within a few hours of their alleged commission; as part of this investigation, appellant Stephen Weltz was asked, and voluntarily agreed, to come to the police station and was accompanied by his father; while appellant Weltz and his father were at the police station, Officer Schlichtig, through a conversation with appellant Douglas Williams, learned of the existence of the note and of the fact that it was in appellant Stephen Weltz's possession; when questioned by Officer Schlichtig about the note, appellant Stephen Weltz's father equivocated and asked, "What note?"; and of particular significance is the fact that no search preceded Officer Schlichtig's obtaining possession of the note. Under these facts we agree with the trial court's determination that Officer Schlichtig acted reasonably in taking steps to, and in actually obtaining, possession of the note.

We hold that the exigencies of the situation justified the officer's seizure of the note. In the situation at bar, the constitutional provisions proscribing unreasonable searches and seizures did not prohibit the seizure of the note in order to prevent its destruction or removal.[23]

The judgments and commitments which were entered below are affirmed.

---

23. Preston v. United States, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777, 780 (1964); Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828, 832–833 (1961); State v. Findlay, 145 N.W.2d 650, 654 (Iowa 1966). Compare Merrill v. State, 423 P.2d 686, 698–700 (Alaska 1967); In re McDonald, 58 Cal.Rptr. 29, 31 (Cal.App., 1967); People v. Phillips, 57 Cal.Rptr. 665, 669–670 (Cal.App., 1967). See Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).