Peter G. BURNETT, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A-75.

Court of Appeals of Alaska.

March 23, 1984.

William F. Dewey, Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, for appellant.

James F. Wolf, Asst. Municipal Prosecutor, Allen M. Bailey, Municipal Prosecutor, and Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C.J., SINGLETON, Judge, and HANSON, Superior Court Judge.[*]

OPINION

SINGLETON, Judge.

Peter G. Burnett pled no contest to a charge of refusing a breathalyzer test. AMC 9.28.022(C). With the approval of the court and the prosecutor he reserved the right to appeal the rejection of his constitutional challenges to the ordinance. We therefore have jurisdiction of this appeal. *Oveson v. Anchorage,* 574 P.2d 801, 803 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251, 1257 (Alaska 1974).

* Hanson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

Burnett challenges the ordinance on its face, alleging that it violates the state and federal constitutions. He concedes that we rejected the same arguments in *Svedlund v. Anchorage*, 671 P.2d 378 (Alaska App. 1983). *See also Jensen v. State*, 667 P.2d 188 (Alaska App.1983); *Coleman v. State*, 658 P.2d 1364 (Alaska App.1983). He vigorously argues, however, that *Svedlund* was wrongly decided and should be overruled. He bases his primary argument on *Elson v. State*, 659 P.2d 1195 (Alaska 1983), which he contends cannot be reconciled with *Svedlund*. We believe Burnett has misconstrued the holding of *Elson*. We are satisfied that *Svedlund* was properly decided and that it is compatible with the decisions of the Alaska Supreme Court. We therefore affirm his conviction.

## THE *ELSON* DECISION

Elson was lawfully arrested by a state trooper for driving while intoxicated. Pursuant to the arrest, the trooper conducted a pat down search and felt something hard in Elson's back pocket which he believed was a knife. When the trooper attempted to remove the object Elson attempted to stop him by grabbing his hand. The object turned out to be a cocaine snifter and a vial containing cocaine residue. Prior to his trial for possession of cocaine, Elson sought a protective order to prevent admission of any testimony by the trooper regarding Elson's attempt to prevent the search of his pocket. The motion was denied and Elson was convicted.

Elson appealed to this court, and we upheld the admission of the trooper's testimony, finding no violation of the right to privacy. *Elson v. State*, 633 P.2d 292, 297–98 (Alaska App.1981). We recognized prior decisions of the Alaska Supreme Court holding that evidence of a defendant's refusal to consent to an illegal search was not admissible at trial. However, we concluded that the trooper's search of Elson was a legal search incident to arrest and therefore his refusal to consent to the search was admissible in evidence to show consciousness of guilt, *i.e.*, knowledge of possession of contraband.

The supreme court disagreed:

In our view, the crucial question is not whether a search is illegal, but rather whether the admission of a refusal to consent to a search, legal or illegal, will inhibit the exercise of fourth amendment rights. The contrary position advocated by the state, in which the admissibility of the refusal would turn on the the legality of the search, places an individual facing a police request to search in a difficult dilemma. As Elson points out, the legality of a search is often determined long after the fact, and thus a person who is asked to consent to a search would not know whether he is protecting or prejudicing himself by choosing not to consent. If the person consents, the fruits of the search would be admissible regardless of whether the police had the right to search without consent. If the person believes the search is impermissible and withholds his consent, he risks having his refusal considered as an admission of guilt if it is later ascertained that the nonconsensual search was permissible. An individual in this situation would have to balance a desire to assert his perceived fourth amendment rights against the risk of self-incrimination. This tension is magnified by the fact that in deciding whether to consent to a search, the individual is usually acting without the benefit of counsel's advice as to the legality of the police conduct and the possible success of fourth amendment objections. In our view, the analysis adopted by the Court of Appeals would penalize individuals for their ignorance of the arcane intricacies of search and seizure law by allowing mistaken assertions of perceived fourth amendment rights to be used as evidence of guilt.

*Elson v. State*, 659 P.2d at 1198–99.

The supreme court therefore held that a verbal refusal to consent to a legal search was privileged and could not be used as evidence of guilt in a subsequent prosecu-

tion. *Id.* at 1199. The court then considered whether Elson had a constitutional right to physically resist the search of his back pocket. The court concluded that a private citizen may not use force to resist a peaceful search by one he knows or has good reason to believe is an authorized police officer performing his duties regardless of whether the search is ultimately determined to be illegal. *Id.* at 1200. Such conduct was therefore not privileged. Elson's argument that the evidence of his resistance should have been excluded because its probative value was outweighed by the danger of unfair prejudice was also rejected. *See* A.R.E. 403. The court concluded that evidence of Elson's physical resistance did have some tendency to show "that he was aware of the cocaine in his pocket" and consequently was properly admitted. *Id.* at 1201.

In reaching these conclusions the court expressly refused to consider whether a refusal to provide physical characteristic evidence fell within the evidentiary privilege it had established. The court said:

> We recognize that some courts have held that a defendant's refusal to provide "non-testimonial" evidence (fingerprints, writing sample, *breath sample*) is admissible at trial. The general rationale adopted by these cases is that the defendant has no fifth amendment right to refuse to cooperate or to submit to the tests, thus the admission of the defendant's refusal does not infringe on the privilege against compelled self-incrimination. The defendant's refusal to consent is seen not as a testimonial communication but rather as conduct which is circumstantial evidence of his consciousness of guilt. Whatever the merits of this line of reasoning, we think it is inapplicable to cases where the defendant refuses to consent to a search which he mistakenly believes to be illegal. It is settled that a defendant has no federal constitutional right to refuse to provide evidence of his physical traits. The admission of the defendant's refusal in one case will not inhibit his future assertion of his fifth amendment rights since by

definition the defendant will never have the right to refuse to provide this evidence. In contrast, the admission of an individual's refusal to consent to a legal search in one case may inhibit individuals from exercising the right to refuse consent to some future illegal search. We therefore hold that evidence of a refusal to consent to a search is inadmissible regardless of the legality of the search.

659 P.2d at 1199 (footnotes omitted; citation omitted) (emphasis supplied).

We addressed *Elson* in *Svedlund,* where we said:

> Svedlund argues that there is a constitutional right to refuse to consent to a search. He reasons that a breathalyzer examination is a search and consequently concludes that sanctioning his refusal constitutes an impairment of his right to be free of unreasonable searches. *See Elson v. State,* 659 P.2d 1195, 1199 (Alaska 1983).
>
> Assuming *arguendo* that the breathalyzer could be construed as a "search," the police may lawfully search incident to an arrest. A suspect cannot be prosecuted for refusal to submit to a breathalyzer unless there is probable cause to believe he was driving while intoxicated. We conclude that offering Svedlund a breathalyzer examination, where there was independent evidence establishing probable cause to charge him with driving while intoxicated, was a lawful search incident to an arrest. Prosecuting Svedlund for refusing the test did not violate his fourth amendment rights.

671 P.2d at 384 (footnote omitted; citations omitted).

During oral argument Burnett questioned our hesitancy in *Svedlund* to label a breathalyzer examination a "search" and criticized our conclusion that characterizing such an examination as a search incident to an arrest solves all of the problems presented by the *Elson* case. He suggests that our uncertainty about the "search" issue has generated substantial confusion in the trial courts.

## IS A BREATHALYZER EXAMINATION A SEARCH?

The state and federal constitutions protect the right of the people to be secure in their persons, houses, and other property, papers and effects against unreasonable searches and seizures. *See* Alaska Const. art. 1, § 14; U.S. Const. amend. IV. Neither constitution defines the term "search." In *Weltz v. State*, 431 P.2d 502 (Alaska 1967), the supreme court stated:

A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search'.

431 P.2d at 505 (footnote omitted) (quoting *Brown v. State*, 372 P.2d 785, 790 (Alaska 1962).

In a subsequent case, *Schraff v. State*, 544 P.2d 834, 839 (Alaska 1975), the supreme court observed: "Certainly riffling through a person's wallet for contents which are unobservable from outside the wallet fits this definition of a search." These descriptions reflect the traditional view of a search as a trespass to person or property.

In *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967), the United States Supreme Court defined "search" as an invasion of personal privacy rather than as a common law trespass. In his concurring opinion Justice Harlan suggested a two-pronged test to identify those cases where an invasion of privacy constitutes a constitutional search:

My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587–88 (Harlan, J., concurring).

The Alaska Supreme Court has applied Harlan's two-pronged test in a number of cases. *See, e.g., State v. Daniel*, 589 P.2d 408 (Alaska 1979). The *Katz* test encompasses conduct that would not satisfy the earlier definition of a common law trespass. In *Dye v. State*, 650 P.2d 418, 421–22 (Alaska App.1982), we recognized that the converse might be true; some conduct that would have been a search under the *Weltz* definition because it would constitute a technical trespass would not qualify under the *Katz* test because society was not prepared to recognize the owner's expectation of privacy as reasonable. In *Dye* a fish biologist who was authorized to be on a ship's deck to observe the unloading of crab went into the ship's hold without permission and clearly committed a trespass. We nevertheless found that his trespass did not constitute a search. We found:

[T]he question presented is whether under the relevant facts and circumstances Dunaway's observations constituted a search. Phrased differently, did the captain and crew of the vessel Yankee Clipper (1) have a subjective expectation of privacy in the crab stored in the ship's hold at the time of Dunaway's observations; and (2) was that expectation, if held, one which society would protect?

650 P.2d at 421–22. We deferred to the trial court's determination that the defendants had an actual expectation of privacy in the cargo but concluded that it was not one that society was prepared to respect. We reached this conclusion in part because the only evidence observed by the biologist— undersized crab—was in the process of being moved onto the deck where it would have been in plain view. Our conclusion paralleled the doctrine of inevitable discovery. We therefore denied Dye's constitutional claim.

We applied the same reasoning in *Liston v. State*, 658 P.2d 1346, 1348 n. 1 (Alaska App.1983), where we decided that requesting an incarcerated defendant to provide nontestimonial evidence, *i.e.*, thumb prints, was not a constitutional search. We recognized that obtaining identification evidence

might, unless privileged, constitute a trespass, but held that standing alone it would not constitute a "search". We distinguished between two types of requests for evidence of personal characteristics based on whether granting the request would subject a suspect to pain or embarrassment. If a request for nontestimonial evidence does not have such an effect then it is not a search. Where, however, obtaining the evidence would subject the person to pain or embarrassment, we would find a "search" and require either consent or a court order. *Id. See also Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). We note that in *Illinois v. Andreas*, — U.S. —, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), a majority of the United States Supreme Court implicitly recognized that police conduct could constitute a common law trespass to property and nevertheless not constitute a "search" under the constitution. The Court held that the loss of the defendant's privacy interest in the contents of a sealed container as a result of a *prior lawful search* precluded a finding of an unconstitutional search where officers indisputably trespassed against the defendant's property rights in the container by conducting a second search.

Given the numerous recent decisions of the United States Supreme Court indicating that a defendant has no constitutional right to refuse to supply physical characteristic evidence, including a breath sample, we recognize that arguably a demand for such evidence may not constitute a search under the *Katz* test. *See, e.g., South Dakota v. Neville*, — U.S. —, —, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983) (refusal to take a breathalyzer examination not pro-

tected by the privilege against self-incrimination); *United States v. Mara*, 410 U.S. 19, 22, 93 S.Ct. 774, 776, 35 L.Ed.2d 99, 103 (1973) (demand for handwriting exemplars violated no fourth amendment interest); *United States v. Dionisio*, 410 U.S. 1, 14–15, 93 S.Ct. 764, 771–72, 35 L.Ed.2d 67, 79–80 (1973) (demand for voice exemplar not a fourth amendment search). *But see Cupp v. Murphy*, 412 U.S. at 295, 93 S.Ct. at 2003, 36 L.Ed.2d at 905 (fingernail scrapings constituted the type of "severe, though brief, intrusion" upon defendant's personal security that is subject to constitutional scrutiny); *Commonwealth v. Quarles*, 324 A.2d 452, 460 (Pa.Super.1974) (breathalyzer examination is a search).

 We believe that the question of whether a breathalyzer is a search is a close issue. *See Illinois v. Andreas*, — U.S. at —, —, 103 S.Ct. at 3325, 3329, 77 L.Ed.2d at 3329 (Marshall, J., dissenting; Stevens, J., dissenting). It was not necessary for us to decide the issue in *Svedlund* because both the Anchorage ordinance discussed in *Svedlund* and the state statute discussed in *Jensen* required probable cause to arrest a person for driving while intoxicated before requiring him to take a breathalyzer. We conclude, therefore, that we should assume *arguendo* that a breathalyzer examination is a search. Where such an examination is conducted in compliance with AMC 9.28.022 or AS 28.35.031.-032, we are satisfied that it is a reasonable search under the constitution because it is incident to arrest. *See Cupp v. Murphy*, 412 U.S. at 295, 93 S.Ct. at 2003, 36 L.Ed.2d at 905. *See also* 1 W. LaFave, *Search and Seizure* § 2.6(a) (1978).[1]

---

1. A person's breath, like the sounds he utters, originates inside him but is constantly exposed to the public. In this sense a breathalyzer examination has much in common with the recording of voice exemplars discussed in *United States v. Dionisio*, 410 U.S. at 15, 93 S.Ct. at 771, 35 L.Ed.2d at 79. It would not seem that blowing into a breathalyzer would be a greater intrusion on privacy than speaking into a recorder. The ultimate question is one of value. Should a free society tolerate subjection of citizens to breathalyzer examinations free of constitutional constraints? In a different context, LaFave sug-

gests some good reasons for characterizing intrusions similar in nature to breathalyzer examinations as searches, for example, canine sniffs, magnetometers and x-rays. *See* 1 W. LaFave, Search and Seizure § 2.2(f) (1978). On the other hand, in *United States v. Place*, — U.S. —, —, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110, 121 (1983), the Court held that subjecting luggage to sniffing by trained dogs did not constitute a search. The court felt that a canine sniff was *sui generis* regarding the manner of obtaining information and the limited content of the information obtained. This rationale might

Burnett argues that even if a demand that he submit to a breathalyzer would be a search incident to an arrest and therefore exempt from fourth amendment protection, his refusal cannot be sanctioned without violating the rule of *Elson.* We disagree. We are satisfied that *Elson* did not hold that comment on the exercise of a constitutional right was itself a constitutional violation. Rather we read the supreme court as establishing a limited evidentiary privilege similar to A.R.E. 407 (precluding evidence of subsequent remedial measures to show negligence) and A.R.E. 408 (prohibiting introduction of evidence of compromise or offers to compromise). This is clear from the supreme court's refusal to extend the privilege to physical resistance. *Elson v. State,* 659 P.2d at 1200. We note that Justice Compton, who dissented on this issue and would have found nonviolent physical resistance privileged, nevertheless conceded that the conduct to which he would have extended the privilege could result in criminal penalties for resisting or interfering with an arrest. 659 P.2d at 1206 (Compton, J., dissenting). Nothing in *Elson* purports to preclude a statute making suppression of evidence a crime even though the conduct constituting the suppression of evidence might be characterized as resistance to a search. Such conduct is generally subject to sanction. *See* 1 W. LaFave, *Search and Seizure* § 1.11 (1978).

We see no reason to establish a privilege in this case. First, we do not believe that an evidentiary privilege that is not mandated by the constitution can invalidate a properly enacted statute. Second, the Alaska Supreme Court in *Elson* established an evidentiary privilege barring the adverse use in evidence of a refusal to consent to a search based on a reasoning process similar to that contemplated by Alaska Evidence Rule 403. In *Elson* the supreme court recognized the prejudicial effect of admitting evidence of refusal to consent to a search to show consciousness of guilt; it could result in chilling the future exercise

of fourth amendment constitutional rights. Essentially, the supreme court found that this undesirable result outweighed the probative value of the evidence as a matter of law, justifying establishment of a privilege barring its admission. In contrast, the court reasoned that where the refusal was physical, the public policy in favor of discouraging resisting arrest outweighed the risk of chilling constitutional rights so that the probative value of the evidence, while still weak, outweighed its prejudicial effect. *Id.* at 1201.

When we apply this reasoning to refusal to take a breathalyzer it is clear that no privilege should be established. The legislature did not choose to punish refusal to take a breathalyzer because it believed that such a refusal established consciousness of guilt of drunk driving. Rather, the legislature sought to punish suppression of evidence which might be either inculpatory or exculpatory. *See Jensen v. State,* 667 P.2d 188, 190 (Alaska App.1983). *See also Lundquist v. State,* 674 P.2d 780, 782–783, 784–785 (Alaska 1983). Thus the probative value of evidence of a refusal is high because it is virtually conclusive on the primary element of the offense. *Cf. Johnson v. State,* 662 P.2d 981, 989 (Alaska App. 1983) (trial court did not err in permitting defendant's admission that he had intercourse with complaining witness into evidence despite contention that admission constituted refusal to submit to pubic hair combing based upon alleged fourth amendment rights).

We also conclude that the "prejudicial effect" of the statute on the exercise of fourth amendment rights is virtually nonexistent. A defendant is entitled to certain warnings clarifying that he has no constitutional right to refuse the test. Thus there is little risk that he reasonably could be confused about his rights. Further, we see no reason to establish a privilege in this case because the defendant does not lose

---

also apply to breathalyzer examinations since they are limited both in terms of the nature of

the intrusion and the nature of the information produced.

the right to contest probable cause to arrest by submitting to the breathalyzer. If the defendant was illegally stopped or arrested then his consent to the breathalyzer examination would be tainted by that illegal arrest. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprints obtained as result of illegal arrest suppressed); *Copelin v. State*, 659 P.2d 1206 (Alaska 1983) (defendant's consent to breathalyzer examination does not preclude suppression motion based upon contention that defendant was denied his statutory right to contact counsel prior to deciding to take breathalyzer).

Finally, the statute in question does not violate the rule of *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). In *Brown*, the Supreme Court invalidated the conviction of a defendant under a statute punishing refusal to provide identification to an arresting officer. The Court did not invalidate the statute on its face, but held that the officer who asked Brown for identification lacked the reasonable suspicion necessary for an investigatory stop; therefore an application of the statute to convict Brown was forbidden by the fourth amendment. In reaching its conclusions, the Court said:

> We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements.

443 U.S. at 53 n. 3, 99 S.Ct. at 2641 n. 3, 61 L.Ed.2d at 363 n. 3 (citations omitted).

The Court's hesitancy was apparently based on a belief that there might be fifth amendment, rather than fourth amendment, problems in sanctioning refusal to provide identification. *See Michigan v. De-Fillippo*, 443 U.S. 31, 44, 99 S.Ct. 2627, 2636, 61 L.Ed.2d 343, 354 (1979) (Brennan, J., dissenting); 3 W. LaFave, *Search and Seizure* § 9.4(g) (Supp.1984). As we have seen, however, the fifth amendment does not preclude sanctioning a refusal to submit to a breathalyzer examination. *Cole-*

*man v. State*, 658 P.2d 1364 (Alaska App. 1983).

We conclude that a statute or ordinance penalizing refusal to submit to a breathalyzer test does not violate the fourth or fourteenth amendments of the United States Constitution, or article I of the Alaska Constitution.

The judgment of the district court is AFFIRMED.

COATS, J., not participating.

BRYNER, Chief Judge, concurring.

I concur in the result reached by the majority of the court. I also agree with the court's conclusion that the taking of a breath sample should be treated as a fourth amendment search. However, I am not convinced that the narrow reading given by the court to *Elson v. State*, 659 P.2d 1195 (Alaska 1983), is appropriate. I am not certain that the court's interpretation of *Elson* accurately reflects the intent of the supreme court in that case. Nor do I believe that a narrow reading of *Elson* is necessary to a correct disposition of Burnett's claim on appeal. I think that a proper reconciliation of our holding in *Svedlund v. Anchorage*, 671 P.2d 378 (Alaska App. 1983), with the supreme court's holding in *Elson* depends more upon the validity of the implied consent doctrine than it does upon a restrictive reading of *Elson*.

In *Elson*, the supreme court's primary concern was with the typical situation encountered in search and seizure cases, where an individual's consent will independently validate a warrantless search. It was in this context that the supreme court emphasized the dilemma created by a rule permitting comment on an individual's refusal to consent to a lawful search:

> [T]he legality of a search is often determined long after the fact, and thus a person who is asked to consent to a search would not know whether he is protecting or prejudicing himself by choosing not to consent. If the person consents, the fruits of the search would

be admissible regardless of whether the police had a right to search without consent.

*Elson,* 659 P.2d at 1198–99 (footnote omitted). By precluding comment on the exercise of the right to withhold consent to a search, the court in *Elson* sought to assure that individuals could preserve their right to challenge the validity of warrantless searches, without fear of suffering prejudice.

By contrast, when an individual is asked to submit to a breathalyzer examination, a different situation arises; consent to take a breathalyzer cannot realistically be equated with other cases in which consent to a warrantless search is given. The obligation to submit to a breathalyzer examination arises only after an arrest, based on probable cause, for driving while intoxicated. In such cases, police officers must inform arrestees that they are required by law to submit to a breathalyzer examination. Because the implied consent warning states that submission to a breathalyzer test is required by law, a person who "consents" to take the test does not forfeit the right to challenge the admissibility of his test results; where probable cause for arrest does not exist, suppression of the test results will be required. Conversely, in the event of a refusal, lack of probable cause for arrest would be a complete defense to a criminal charge for refusing to submit to the test.

These differences between implied consent cases and other types of cases involving consent to warrantless searches reflect the need to consider carefully the function performed by the implied consent law.

The purpose of implied consent is not, as Burnett contends, to compel a waiver of fourth amendment rights or to penalize the refusal to give such a waiver. Because the implied consent statute requires a lawful arrest for driving while intoxicated before a person can be requested to submit a sample of his breath, the warrantless seizure of a person's breath will be justified as a search incident to arrest in every case where police properly request a breathalyzer test. Where a police request for a breath sample is improper because probable cause to arrest does not exist, consent to take the test would not constitute a waiver of fourth amendment rights, since evidence of the test results would be subject to subsequent challenge and suppression. Thus, the implied consent statute simply does not compel individuals to waive their fourth amendment rights. Rather, the statute requires persons who have been arrested for driving while intoxicated to cooperate in providing police with information that they are legally entitled to obtain. In each case, the authority to obtain the information sought derives not from the implied consent law, but from the probable cause that justified the arrest for driving while intoxicated.

Even if the *Elson* court intended to hold that comment on the exercise of fourth amendment rights was constitutionally prohibited, that holding would be inapposite here, because a refusal to submit to a breathalyzer test is not an exercise of fourth amendment rights. Nor do I think that imposition of penalties for a refusal to submit to a breathalyzer tends to chill the legitimate exercise of fourth amendment rights. As previously indicated, persons arrested for driving while intoxicated must be given express notice that they are required to submit to a breathalyzer test. If a person does not believe that a warrantless seizure of his breath is justified, he does not forfeit the right to assert this claim by submitting to a breathalyzer test. And if a person correctly believes that probable cause for his arrest was lacking, he cannot be subjected to penalties for his refusal to take the breathalyzer test.

Accordingly, I do not think that the pivotal issue in this case is whether the exercise of fourth amendment rights may properly be penalized. Instead, the issue is whether criminal sanctions may constitutionally be imposed for violation of a law

that requires citizens to cooperate with law enforcement officers who seek evidence that they have a right to obtain. The validity of criminal sanctions under these circumstances, I believe, depends largely upon the validity of the substantive provisions of the implied consent law. Because of the high level of public interest in assuring traffic safety, our implied consent statute has withstood constitutional challenge, as have similar statutes in numerous other jurisdictions. If the implied consent law is to be taken seriously then I see no more reason to prohibit imposition of criminal penalties for violation of that law than for violation of any other valid law.