Bernard WAMSER, Appellant,

v.

STATE of Alaska, Appellee.

No. 3645.

Supreme Court of Alaska.

Oct. 12, 1979.

George F. Vogt, Kodiak, for appellant.

John G. Gissberg, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

Bernard Wamser was convicted of unlawfully fishing for king crab in closed waters. In this appeal Wamser challenges the introduction of certain evidence at his trial on the ground that such evidence was obtained in violation of AS 16.05.180.[1] We hold that the evidence was properly admitted and affirm his conviction.

At approximately 3:00 p. m., on September 27, 1976, state Fish and Wildlife Protection officers observed Bernard Wamser raising crab pots and removing their contents in Kazakof Bay (Danger Bay), an area which was closed to crab fishing at that time.[2] The officers approached Wamser, and he told the officers that, while he was aware the area was closed to fishing, rough weather had prevented him from pulling his gear. Wamser further explained that he intended to move the pots to Tonki Bay, an

1. AS 16.05.180 provides:
   *Power to search without warrant.* Each person designated in § 150 of this chapter may without a warrant search any thing or place if the search is reasonable or is not protected from searches and seizures without warrant within the meaning of § 14, art. I of the state constitution, which specifically enumerates "persons, houses and other property, papers and effects." However, before a search without warrant is made a signed written statement by the person making the search shall be submitted to the person in control of the property or object to be searched, stating the reason the search is being conducted. A written receipt shall be given by the person conducting the search for property which is taken as a result of the search. The enumeration of specific things does not limit the meaning of words of a general nature.

2. Kazakof Bay was closed to king crab fishing beginning September 24, 1976. Alaska Dep't of Fish and Game, Commercial Fisheries Emergency Order 4–S–28–76 (Issued Sept. 22, 1976).

**1360**

area that was open to fishing, but that he probably would not get all of them moved until the next day. Because the pots were baited and otherwise operational, Wamser was actually fishing in violation of 5 AAC 34.435(a) when first observed.[3] However, he was not cited at that time.

Without notifying Wamser of their intentions, the officers returned to the area a few hours later to pull the pots and mark any crabs that might be found in them. The officers selected crabs from each of five pots and marked them with the vessel's initials, their own initials, the gear number, and the date. After seizing samples of the bait contained in the bait cans, the officers placed the marked crabs back in the pots and returned them to the sea bottom.

On October 7 two of the marked crabs were discovered in the tank of a commercial crab processing plant. On the date of discovery four vessels made deliveries to the plant. Wamser's vessel was one of them. Wamser was subsequently charged with

fishing for king crab in closed waters in violation of 5 AAC 34.435(a), a misdemeanor under AS 16.05.920(a). At trial, over the objection of Wamser's attorney, the district court admitted into evidence the marked crab claws, the bait and the testimony of one of the officers who had raised the crab pots.[4]

The basis of this appeal is Wamser's contention that the officers' actions in pulling his gear, marking the contents, and seizing samples of the bait violated AS 16.05.180 because such actions were taken without giving him notice of the officers' intentions. AS 16.05.180 permits warrantless searches of property in certain fish and game cases but imposes the requirement of notice to the person in control of the property before the search can be conducted.[5] AS 16.05.190 permits the seizure of such property pursuant to a valid search.[6]

In *Nathanson v. State*, 554 P.2d 456 (Alaska 1976), we held that the inspection and seizure of crab pots under similar cir-

---

**3.** 5 AAC 34.435, at the time in question, provided in part:

The following waters are closed to king crab fishing:
(a) Marmot Bay: fishing is prohibited after 12:00 noon, September 24, 1976 in those waters of the Northeast district west of a line from Cape Izhut to North Cape on Spruce Island and from Ouzinkie Point to Otmeloi Point.

.    .    .    .    .

**4.** The jury returned a verdict of guilty of the offense charged on March 23, 1977, and a judgment of conviction was entered in the district court on March 25, 1977. Wamser was fined $5,000, committed to the custody of the Commissioner of Health and Social Services for a period of 30 days, and his fishing license suspended for a period of one year. Payment of one-half the fine ($2,500) was suspended on the condition that he violate no state, federal or municipal laws for a period of one year. Execution of sentence was stayed pending appeal of Wamser's conviction. Wamser appealed to the superior court, where Presiding Superior Court Judge Ralph E. Moody affirmed the conviction on the basis of the record alone without benefit of briefing by the parties. This appeal followed.

**5.** *See* note 1 *supra.*

**6.** AS 16.05.190 provides:
*Seizure without warrant and confiscation by court.* Guns, traps, nets, fishing tackle, boats, aircraft, automobiles or other vehicles, sleds, and other paraphernalia used in or in aid of a violation of this chapter, or rule or regulation of the department may be seized under a valid search, and all fish and game, or parts of fish and game, or nests or eggs of birds, taken, transported, or possessed contrary to the provisions of this chapter, or rule or regulation of the department shall be seized by any person designated in § 150 of this chapter. Upon conviction of the offender or upon judgment of the court having jurisdiction that the item was taken, transported, or possessed in violation of this chapter or rule or regulation of the department, all fish and game, or parts of them are forfeited to the state and shall be disposed of as directed by the court. If sold, the proceeds of the sale shall be transmitted to the proper state officer for deposit in the general fund. Guns, traps, nets, fishing tackle, boats, aircraft, or other vehicles, sleds, and other paraphernalia seized under the provisions of this chapter, or rule or regulation of the department, unless forfeited by order of the court, shall be returned, after completion of the case and payment of the fine, if any.

cumstances was not a violation of AS 16.-05.180 because the owner of the pots, who was not present at the time, was not a "person in control of the property or object to be searched." *Id.* at 460. The case at bar is distinguishable because Wamser was present when the intent to search was formulated. Therefore, the rationale that we used in *Nathanson*[7] would not support the actions of the officers in the instant case. Our ultimate conclusion, however, is the same.

In *Nathanson* it was unnecessary for us to decide whether the requirements of AS 16.05.180 applied *at all* to the inspection of crab pots, since, even if the statute were applicable, we were able to conclude that it was not violated in that case. We did, however, address the protection afforded to one in the same position as Wamser under the search and seizure provisions of the fourth amendment to the United States Constitution and article I, section 14, of the Constitution of Alaska. We held that a person conducting crabbing operations in the waters of the state "had no protectable federal or state constitutional interest in the seized evidence." 554 P.2d at 459 (footnote omitted). The basis for our decision was that, given the important and closely regulated nature of the crabbing industry, such persons "could not harbor an 'actual (subjective) expectation of privacy' in conducting their crabbing operation in the waters of the state, at least not one that 'society is prepared to recognize as reasonable.'" 554 P.2d at 459. The same reasoning persuades us to hold in this case that the legislature must have intended that crab pots set in state waters to be outside the protection of the notice requirements of AS 16.05.180.[8] In short, AS 16.05.180 did

not apply and the evidence complained of was, therefore, lawfully obtained.

AFFIRMED.

---

7. In *Nathanson* we said: "We think that it would frustrate the governmental purpose behind the regulation to require the officers to hold in abeyance the search in order to discern the whereabouts of the fisherman in control or to arrange with him in advance for a convenient time to conduct the search." 554 P.2d at 460.

8. A full explanation of our reasoning is set forth in our opinion in *Nathanson*. It is unnecessary to repeat it here in further detail. Suffice it to say that given the considerations therein described, we conclude that the legislature could not have intended AS 16.05.180 to apply to the inspection and seizure of crab pots set in state waters.