**Charles DYE, Michael Nixon, Kent Buffington and Howard G. Malcolm, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 5599.**

Court of Appeals of Alaska.

Sept. 17, 1982.

---

Daniel W. Westerburg, and Jeffrey B. Lowenfels, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellants.

W. H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Dye, Nixon, Buffington, and Malcolm (the captain and members of the crew of the crab fishing boat Yankee Clipper) were charged in separate misdemeanor complaints with possession of undersized tanner crab in violation of 5 AAC 35.060(a).[1] The complaints were based upon observations of Dan Dunaway, a shellfish biologist employed by the State Department of Fish and Game. All of the cases were consolidated for trial. Pursuant to Alaska Rule of Evidence 412,[2] the appellants moved to suppress Dunaway's testimony and argued that Dunaway's observations constituted a search rendered illegal by noncompliance with AS 16.05.180.[3] The state conceded be-

1. 5 AAC 35.060 provides, in pertinent part:
   SIZE LIMIT FOR TANNER CRAB. (a) Male tanner crab of the species Chionoecetes bairdi five and one-half inches (140 mm) or greater in width of shell may be taken or possessed, unless otherwise provided in 5 AAC 35.

2. Alaska R. Evid. 412 provides in relevant part:
   Evidence illegally obtained shall not be used over proper objection by the defendant in a criminal prosecution for any purpose except:
   (1) a statement illegally obtained in violation of the right to warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be used in a prosecution for perjury if the statement is relevant to the issue of guilt or innocence and if the prosecution shows that the statement was otherwise voluntary and not coerced; and

   (2) other evidence illegally obtained may be admitted in a prosecution for perjury if it is relevant to issue of guilt or innocence and if the prosecution shows that the evidence was not obtained in substantial violation of rights.

3. AS 16.05.180 provides:
   *Power to search without warrant.* Each person designated in section [AS 16.05.150] of this chapter may without a warrant search anything or place if the search is reasonable or is not protected from searches and seizures without warrant within the meaning of § 14, art. I of the state constitution, which specifically enumerates "persons, houses and other property, papers and effects." However, before a search without warrant is made a signed written statement by the person making the search shall be submitted to

low and concedes here that Dunaway did not comply with AS 16.05.180 in that he did not furnish the appellants with a written statement notifying them of the reason for the search. However, the state argues, and the trial court found, that Dunaway was not included within the category of officers mentioned in AS 16.05.150 and consequently was not subject to AS 16.05.180. The parties concede that Dunaway was not authorized by the commissioner to enforce the act. The trial court denied the motion to suppress and the appellants then plead *nolo contendere,* reserving their right to appeal denial of the suppression motion to this court. The state stipulates that a ruling by this court favorable to the appellants will terminate the case. Thus, we have jurisdiction to consider this appeal. *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

Appellants do not contend that Dunaway's actions violated their rights under either the Alaska or federal constitution. This concession is apparently based on their reading of *Wamser v. State,* 600 P.2d 1359 (Alaska 1979) and *Nathanson v. State,* 554 P.2d 456 (Alaska 1976). *See also* the discussion of *Nathanson* in *Woods and Rhode Inc. v. State, Department of Labor,* 565 P.2d 138, 149–50 (Alaska 1977). Consequently, we do not address the constitutionality of Dunaway's actions.

The trial judge made no specific findings of fact, although he apparently viewed AS 16.05.180 as governed by AS 16.05.150,[4] and concluded that only those persons designat-

ed in the latter were required to give the notice and supply the inventory required by the former. He apparently concluded that because fish biologists (such as Dunaway) are not named in AS 16.05.150 they are not governed by AS 16.05.180 when they make what the trial judge characterized as administrative inspections. He expressly rejected the state's contention that the appellants lacked a publicly recognized expectation of privacy in the contents of the ship's hold, a contention which if accepted would render AS 16.05.180 inapplicable.[5]

We recognize that the appellants make no constitutional claim and rely exclusively on AS 16.05.180. The trial court's determination that Dunaway, as a fish biologist, was not governed by AS 16.05.150, and a fortiori, not governed by AS 16.05.180 is plausible given the peculiar facts of this case but presents difficult questions we would prefer to reserve for another time. While Dunaway wore no badge and was not expressly authorized to engage in enforcement, he was a state employee, coordinated his activities with enforcement personnel and was instructed by his superiors to report all observed violations of fish and game regulations to enforcement officers. Under these circumstances, it is a close question whether his activities were sufficiently intertwined with those of enforcement personnel so that he could be termed their agent. *Compare McConnell v. State,* 595 P.2d 147 (Alaska 1979), *cert. denied,* 444 U.S. 918, 100 S.Ct. 235, 62 L.Ed.2d 173 (1979); *Snyder v. State,* 585 P.2d 229 (Alaska 1978); and *Schraff v. State,* 544 P.2d

the person in control of the property or object to be searched, stating the reason the search is being conducted. A written receipt shall be given by the person conducting the search for property which is taken as a result of the search. The enumeration of specific things does not limit the meaning of words of a general nature.

4. AS 16.05.150 provides:
   ENFORCEMENT AUTHORITY. The following persons are peace officers of the state and they shall enforce this chapter:
   (1) an employee of the department authorized by commissioner;
   (2) a police officer in the state;

(3) any other person authorized by the commissioner.

5. The trial judge found in appellants favor on this issue; we are bound by his factual findings, unless clearly erroneous. *Troyer v. State,* 614 P.2d 313, 318 (Alaska 1980). However, we are free to exercise our independent judgment regarding questions of law and the legal content of any mixed question of fact and law, *see Yukon Equipment Inc. v. Fireman's Fund Insurance Co.,* 585 P.2d 1206, 1210 (Alaska 1978). For reasons that will appear, we consider the question of the reasonableness of Dye's expectation of privacy one purely of law.

834, 839–40 (Alaska 1975); *with J. M. A. v. State,* 542 P.2d 170, 174–76 (Alaska 1975).

We would prefer to rest our conclusion on a number of Alaska Supreme Court decisions interpreting art. 1, § 14 and § 22 of our state constitution which we believe establish that under the peculiar facts of this case, Dunaway's observations did not constitute a search, and consequently were not within the ambit of AS 16.05.180.[6] In his frequently cited concurring opinion in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Justice Harlan attempted to set out the circumstances under which actions by government officials constituted searches regulated by the fourth amendment to the United States Constitution, when he said:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." *My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expection of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."* Thus, a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.

*Id.* at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587–88 (emphasis supplied).

The Alaska Supreme Court has relied upon Harlan's two-pronged test in a number of cases. *See e.g., State v. Daniel,* 589 P.2d 408 (Alaska 1979); *State v. Glass,* 583 P.2d 872, 879–80 (Alaska 1978); *Woods and Rhode Inc. v. State, Department of Labor,* 565 P.2d 138, 150–51 (Alaska 1977); *Anderson v. State,* 555 P.2d 251, 256 (Alaska 1976); and *Smith v. State,* 510 P.2d 793, 796–97 (Alaska 1973), *cert. denied,* 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973). It is true that in these decisions the court appears to have avoided the "search" issue, and simply held that unless a situation meets the Harlan test, the fourth amendment to the United States Constitution and its Alaska counterparts art. 1, § 14 and § 22 are inapplicable. However, it is clear, upon reflection that their inapplicability depends on the court's finding, consistent with Justice Harlan's test, that no search had taken place. *But cf. Schraff v. State,* 544 P.2d 834, 838–39 (Alaska 1975); *Weltz v. State,* 431 P.2d 502, 505 (Alaska 1967) (utilizing a more traditional definition of search). *See generally,* 1 W. LaFave, Search and Seizure § 2.1 at 221 (1978), (especially n.61).

Recognizing then that the supreme court in *Katz* developed a new definition of "search" for constitutional purposes, and that that definition has been adopted by our Alaska Supreme Court as applicable in determining cases under our own constitution, and further realizing that AS 16.05.180 appears to be a legislative attempt to coordinate fish and game enforcement with constitutional requirements, we conclude that the Harlan test for determining whether a search took place for constitutional purposes should also be utilized in determining whether a search has taken place for purposes of applying AS 16.05.180.

Thus the question presented is whether under the relevant facts and circumstances Dunaway's observations constituted a search. Phrased differently, did the captain and crew of the vessel Yankee Clipper (1) have a subjective expectation of privacy in the crab stored in the ship's hold at the time of Dunaway's observations; and (2) was that expectation, if held, one which

---

**6.** It is, therefore, unnecessary to determine whether a "search" would have been justified by exigent circumstances and if it would, whether AS 16.05.180's notice requirements could therefore be relaxed or eliminated.

society would protect? In order to answer this question we must discuss the surrounding facts.

Fish and Game regulations require fishermen and fish processors to fill out and file reports regarding their operations. *See* 5 AAC 39.130. State fish biologists such as Dunaway are employed by the state to assist fishermen in preparing and submitting these reports by gathering information and recording it on state forms which, when signed by the captain, can be submitted in partial compliance with the administrative regulations. Dunaway was, by permission of the fish processor, living on the Arctic Star, a fish processing vessel owned by Icicle Seafoods. The plant was moored in Akutan Bay about 100 yards from the beach and one mile from the nearest village. At the time in question the appellants' ship, the Yankee Clipper, was tied up to the Arctic Star, and when employees of Icicle Seafoods went aboard to begin unloading, Dunaway went with them. Dunaway, in conformity with his duties (and appellants conceded at oral argument with their tacit permission), was present on the deck observing the unloading and recording information. He noticed that the Icicle employees were throwing a large number of crabs up on the deck and he assumed that they considered them to be too small for legal processing. Dunaway testified that he would have in any event measured approximately 100 crabs chosen at random as part of his biological survey. He became alarmed, however, at the number of undersized crabs and lowered himself into the hold and measured 400–500 crabs which he considered to be below the size limit specified in 5 AAC 35.060. He concluded that the undersized crabs constituted approximately seventeen percent of the catch, as compared to the roughly four percent normally encountered. Given this information he contacted enforcement personnel who commenced the prosecution resulting in appellants' conviction and the instant appeal.

The trial court relied upon these facts and an affidavit submitted by the captain in concluding that Dye did have an actual expectation of privacy in the cargo in his hold. We are of course bound to accept that determination; however, whether that expectation is one which the public will accept as reasonable is a question of law about which we may exercise our independent judgment. *See* 1 W. LaFave, Search and Seizure, § 2.1(d) at 232 (1978). We conclude that no such expectation of privacy was warranted and, consequently, find that Dunaway's observations did not constitute a search into an area of privacy governed by AS 16.05.180. We base our conclusions on the following factors: (1) fishing, and particularly crab fishing, are heavily regulated industries subject to frequent necessary inspections, *see Wamser v. State,* 600 P.2d 1359 (Alaska 1979) and *Nathanson v. State,* 554 P.2d 456 (Alaska 1976); (2) the Yankee Clipper was being unloaded at the time Dunaway made his observations, *i.e.,* the crab which Dunaway observed was in the process of being moved into plain view and out of appellants' control; (3) the unloading was being done by employees of the processor and none of the appellants were monitoring the operation, (4) appellants concede Dunaway was properly on the deck where he could observe the unloading operation and, in fact, observe the undersized crabs thrown on deck by the processor's employees; and (5) Dunaway could see into the hold from the deck where he observed undersized crab.

The judgment of the district court is AFFIRMED.