Gudjon GUDJONNSON, Appellant,

v.

STATE of Alaska, Appellee.

Torben FLINDT, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 7291, 7292.

Court of Appeals of Alaska.

Aug. 12, 1983.

C. Walter Ebell, Hartig, Rhodes, Norman, Mahoney & Edwards, Kodiak, for appellants.

Frank D. Rothschild, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Gudjon Gudjonnson and Torben Flindt[1] were charged with taking undersized crab in violation of 5 AAC 35.060(a). Each made a motion for discovery of the undersized crab. The motions were granted, but the state had not preserved a sample of the undersized crab and thus could not comply. Each then moved to dismiss the complaint against him, but the court denied the mo-

---

1. These cases involve identical facts and issues and are therefore being consolidated, *sua* *sponte,* pursuant to Alaska R.App.P. 204(g), for decision.

tions. Subsequently, both Gudjonnson and Flindt were convicted.

Both Gudjonnson and Flindt appealed, contending that (1) the trial court erred by not dismissing their cases because the state had failed to preserve and produce a sample of the undersized crab, and (2) the trial court improperly inferred the required *mens rea* of the offense merely because they were the skippers of the respective crab vessels. We affirm.

## I. PRESERVATION OF CRAB

In both cases William Sanderlin, fish biologist for the State Department of Fish and Game, boarded the crab boats to measure a sample of the crab catch. Following his usual procedure, he climbed into the hold of the boat and, using calipers, measured about 250 crabs. On a tape, Mr. Sanderlin recorded his finding on each boat of about 13% undersized crab. He later transcribed the tape and sent the results of his findings to Fish and Game authorities. Mr. Sanderlin did not remove any of the undersized crab from either boat. The record shows that the skippers had control of the crab before, during and after the time Mr. Sanderlin took his measurements.

■ We recognize that the state has a duty to preserve evidence which it has gathered and taken into its possession. *United States v. Bryant,* 439 F.2d 642, 650–51 (D.C. Cir.1971); *Nicholson v. State,* 570 P.2d 1058, 1064 (Alaska 1977). Breach of this duty may result in sanctions at trial including, in an appropriate case, the suppression of evidence or even the dismissal of charges. However, Gudjonnson and Flindt had the burden of proving breach of the state's duty in order to prevail, assuming that they made a timely request for production. This burden required that they prove that (1) the evidence destroyed might have been material at trial, *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342, 351 (1976), and (2) they did not have a reasonable opportunity to preserve or test the evidence themselves. *Bradley v. State,* 662 P.2d 993 (Alaska App., 1983). *But cf. Anchorage v. Serrano,* 649 P.2d 256, 258 (Alaska App.1982) (the state must preserve breath samples or take other steps to allow a defendant to verify the breathalyzer exam results; breathalyzer machine is in the exclusive control of the state). We assume that the crabs measured by Mr. Sanderlin would have been material evidence at trial. Nevertheless, a defendant has a reasonable opportunity to preserve evidence when he has notice of its materiality,[2] is not prevented from preserving or testing it, and has sufficient time to do so.

■ It appears that Gudjonnson and Flindt were informed by Mr. Sanderlin that there were undersized crab on their respective boats and that a report would be made to fish and game enforcement authorities. At that time, each skipper could have preserved the crab in question or remeasured them to verify or refute Mr. Sanderlin's findings. Neither Gudjonnson or Flindt argue that there was insufficient time to do this. Thus, we find that they had a reasonable opportunity to preserve the evidence and that the state's inability to produce the crab did not violate Gudjonnson and Flindt's discovery rights or their right to due process. We find no error by the trial court. *See Bradley v. State,* 662 P.2d 993 (Alaska App., 1983).

2. Alaska Statute 16.05.180, which governs searches of fishing vessels without a warrant, provides in relevant part:

[B]efore a search without warrant is made a signed written statement by the person making the search shall be submitted to the person in control of the property or object to be searched, stating the reason the search is being conducted. A written receipt shall be given by the person conducting the search for property which is taken as a result of the search.

In *Dye v. State,* 650 P.2d 418, 620 (Alaska App.1982), we declined to determine whether this statute applied to fish biologists such as Sanderlin because we found on the facts of that case that no search had taken place. No search issue was raised in this case. Neither party has mentioned this statute or discussed its relevance to the "notice issue" we have considered here. We therefore express no opinion regarding the impact of this statute on future similar cases.

## II. IMPLYING MENS REA

In order to convict Gudjonnson and Flindt, the state had to prove that they knew or should have known that they were taking undersized crab. *Reynolds v. State*, 655 P.2d 1313, 1316–17 (Alaska App.1982) (adopting negligence standard for fishing violations). It is undisputed that Gudjonnson and Flindt were the "skippers" of their respective boats. Gudjonnson testified at his trial and Mr. Sanderlin testified at both trials about the duties and knowledge of a skipper. In both cases, the evidence established that the skipper of a crab vessel knows or reasonably should know when undersized crab are taken. *See State v. Rice*, 626 P.2d 104, 110 (Alaska 1981); *see also Butler v. Boston and Savannah Steamship Co.*, 130 U.S. 527, 554, 9 S.Ct. 612, 618, 32 L.Ed.2d 1017, 1023 (1889) ("By virtue of his office and the rules of maritime law, the captain or master has charge of the ship"); *The Princess Sophia*, 61 F.2d 339, 350 (9th Cir.1932) ("The responsibility of navigating the ship and selecting and *directing* the crew rests upon the captain" (emphasis added)), *cert. denied*, 288 U.S. 604, 53 S.Ct. 396, 77 L.Ed. 980 (1933). There was sufficient evidence presented to support the finding of the requisite *mens rea*.

The judgments of the district court are AFFIRMED.