**William J. MACKELWICH, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6224.

Court of Appeals of Alaska.

Dec. 19, 1997.

Michael D. Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and
MANNHEIMER and STEWART, JJ.

MANNHEIMER, Judge.

This appeal requires us to interpret AS 16.05.180, a statute that empowers peace officers and other authorized employees of the Department of Fish and Game to engage in warrantless searches when investigating violations of the fish and game laws. The statute specifies that, before an officer exercises this statutory authority to conduct a warrantless search, the officer must prepare a "signed written statement . . . [of] the reason the search is being conducted" and must "submit[ ] [this statement] to the person in control of the property or object to be searched". The question presented in this appeal is whether this statute (and its requirement of a written statement of the reason for the search) applies to situations in which peace officers search property after having obtained the property owner's consent. We hold that AS 16.05.180 does not apply under such circumstances.

On May 24, 1995, the Alaska State Troopers in Kenai received an anonymous tip that "Will Mackel-something" had poached a moose. The anonymous tip also included a second assertion: that this same person was "possibly [involved with] some type of drugs". The caller gave a general description of the property where the alleged moose-poacher lived; the troopers had earlier heard rumors that marijuana was being cultivated in that general area.

The next day (May 25, 1995), two Alaska State Troopers went to the residence of William J. Mackelwich, Jr., to investigate this tip. The troopers explained that they had received a report of an illegal moose kill, and they asked for permission to search the property. Both Mackelwich and the other occupant of the property, Glenda Healy, consented to the proposed search.[1]

The troopers conceded that they did not prepare a written statement of the reason for the search. (The troopers also conceded that, when they spoke to Mackelwich and Healy, they did not mention their suspicions about marijuana.)

After receiving Mackelwich's consent to look around the property, the two troopers separately walked the grounds. One of the troopers (Trooper Leichliter) found an out-building of unusual appearance: the building had no windows, it was covered in tar paper, and it had two padlocks on a heavy door. A generator was running next to the building. Standing outside this building, Leichliter could smell the odor of growing marijuana. Having made these observations, Leichliter concluded his search and waited for his partner to return.

After the troopers drove back to Kenai, Leichliter applied for a search warrant. The ensuing search revealed that Mackelwich was cultivating marijuana. Mackelwich was ultimately convicted of fourth-degree misconduct involving a controlled substance (possession of 25 or more marijuana plants), AS 11.71.040(a)(3)(G).

On appeal, Mackelwich argues that the search warrant for his property was invalid because the warrant application was based almost entirely on Leichliter's observations of the out-building and the smell emanating from that building. Mackelwich contends that these observations must be suppressed

---

1. The superior court also heard a materially different version of this encounter. Mackelwich and Healy both denied that they had consented to a search of the property. They told the court that the troopers had never asked for permission to search; instead, the troopers had instead simply informed Mackelwich and Healy that they were going to "look around" for evidence of a moose kill.

After hearing this conflicting testimony, Superior Court Judge Jonathan H. Link found that Mackelwich and Healy had in fact consented to the search of the property. Mackelwich does not challenge this finding on appeal.

because, even though the troopers had Mackelwich's consent to search the premises, the troopers failed to provide Mackelwich with a written statement of the reason for the search as required by AS 16.05.180.

The issue is this: Should AS 16.05.180 be construed to govern all warrantless searches conducted to investigate fish and game violations, or should the statute be construed to apply only when a warrantless search is not justified under some other recognized exception to the warrant requirement? For the reasons explained below, we conclude that the latter construction of the statute is correct.

The provision of law currently codified in AS 16.05.180 has a seventy-year history. A predecessor[1] statute was first enacted by Congress in 1925 as part of legislation defining the powers of the Alaska (territorial) Game Commission and its agents. *See* Alaska Game Law of Jan. 13, 1925, ch. 75 § 5, 43 Stat. 741 (codified as amended at 48 U.S.C. § 192 (1940)). This federal statute authorized officers and employees of the Alaska Game Commission to conduct warrantless searches of camps and conveyances whenever they had reason to believe that the search would uncover evidence of game offenses:

> Any officer or employee empowered to enforce this subchapter shall have authority without warrant to search any camp, camp outfit, pack or pack animals, automobile, wagon, or other vehicle, sled, or any boat, vessel, or other craft in the Territorial waters of the United States, or any boat, vessel, or other craft of the United States on the high seas when such officer or employee has reasonable cause to believe that such camp, camp outfit, pack or pack animals, automobile, wagon, or other vehicle, sled, boat, vessel, or other craft has therein or thereon any of the animals or birds, or parts thereof, protected by this

subchapter, taken, possessed, sold, intended for sale, or transported contrary to law.

48 U.S.C. § 192. With slight modification, this provision was later codified as § 44 of the 1933 Compiled Laws of Alaska. With the addition of clauses allowing the warrantless search of fish creels and aircraft, and with the addition of clauses recognizing that fish, bird nests, and bird eggs were also protected, the statute was codified as § 39-6-7 of the 1949 Compiled Laws of Alaska.[2]

The present form of the statute—AS 16.05.180—was enacted in 1959 during the first session of the newly-organized state legislature. *See* SLA 1959, art. I, chap. 94, sec. 22. The statute now provides:

> Each peace officer designated in AS 16.05.150 may without a warrant search any thing or place if the search is reasonable or is not protected from searches and seizures without warrant within the meaning of art. I, § 14, Alaska State Constitution, which specifically enumerates "persons, houses and other property, papers, and effects." However, before a search without warrant is made[,] a signed written statement by the person making the search shall be submitted to the person in control of the property or object to be searched, stating the reason the search is being conducted. A written receipt shall be given by the person conducting the search for property which is taken as a result of the search. The enumeration of specific things does not limit the meaning of words of a general nature.

The current statute differs in three major ways from its predecessors.

First, the legislature dropped the prior detailed listing of places that might be searched without a warrant—basically, camps and conveyances. Instead, the legis-

---

2. The pertinent portion of § 39-6-7, 1949 CLA provided:

> Any officer or other person empowered to enforce this Act shall have authority without warrant to search any camp, camp outfit, fish creel, pack or pack animals, aircraft, wagon or other vehicle, sled, or any boat, vessel, or other craft in the territorial waters of the United States, or any boat, vessel, or other craft of the United States on the high seas

> when such officer or employee has reasonable cause to believe that such camp, camp outfit, fish creel, pack or pack animals, automobile, aircraft, wagon, or other vehicle, sled, boat, vessel, or other craft has therein or thereon any of the animals, birds, or fishes, or parts thereof, or nests or eggs of birds, protected by this Act taken, possessed, sold, intended for sale, or transported contrary to law.

lature declared that officers enforcing the fish and game laws could conduct a warrantless search of "any thing or place".

Second, the legislature added two formal requirements. An officer who intends to conduct a warrantless search must prepare a written statement of the reason for the search and give this written statement to the person in control of the property. Additionally, after the search is completed, the officer must provide a written receipt for any items seized. However, in *Nathanson v. State*, 554 P.2d 456, 459–460 (Alaska 1976), the supreme court held that when no person is in immediate control of the property to be searched, so that compliance with the statutory requirement of written notice would unreasonably delay the investigation, officers conducting the search are excused from these requirements.

Finally, the legislature expanded the scope of the warrantless searches authorized by the statute. The prior statute (in its various forms) had authorized warrantless searches if the officer conducting the search had "reasonable cause" to believe that the search would uncover evidence of a fish and game violation. Although the syntax of AS 16.05.180 is a little garbled, it appears that the current statute was intended to authorize warrantless searches in two different situations. The first situation is "if the search is reasonable". This is analogous to the old requirement of "reasonable cause". The legislature also authorized warrantless searches if the "thing or place [being searched] ... is not protected from searches and seizures without warrant within the meaning of art. I, § 14 [of the] Alaska State Constitution". However, this second clause has been rendered largely moot by two court decisions: *Wamser v. State*, 600 P.2d 1359, 1360–61 (Alaska 1979) (holding that the notice requirements of AS 16.05.180 do not apply when a defendant has no constitutionally protected expectation of privacy in the evidence seized), and *Dye v. State*, 650 P.2d 418, 422

(Alaska App.1982) (holding that the notice requirements of AS 16.05.180 do not apply when the defendant has no constitutionally protected expectation of privacy in the area or property searched).[3]

In Mackelwich's case, the property that was searched was the land surrounding his residence; this property was protected from warrantless search under Article I, Section 14 of the Alaska Constitution. *See Pistro v. State*, 590 P.2d 884, 886–87 (Alaska 1979). Moreover, Mackelwich was present when the officers arrived at the property to conduct their investigation. Thus, we are squarely presented with the issue of whether AS 16.05.180 governs the consent search of Mackelwich's land by officers investigating a violation of the fish and game laws.

Mackelwich argues that the written notice requirement contained in AS 16.05.180 applies to any warrantless search conducted to investigate a potential violation of the fish and game laws. Under Mackelwich's interpretation, AS 16.05.180 was intended to divide warrantless searches into two categories—those conducted to investigate potential violations of the fish and game laws, and all others. Any warrantless search in the first category (that is, a search conducted to investigate a fish and game offense) is governed by special procedural requirements—specifically, the requirements of written advance notice and a receipt for articles seized.

Because AS 16.05.180 does not speak of the recognized exceptions to the warrant requirement, Mackelwich contends that the statute must apply to all warrantless searches, even searches that would be justified under one or more of those recognized exceptions. Thus, Mackelwich concludes, the statutory requirement of advance written notice applies to warrantless searches like the one in his case—a search conducted with the consent of the person who owns or controls the property.

---

**3.** *See also Klockenbrink v. State*, 472 P.2d 958, 960–61 (Alaska 1970), where the supreme court held that AS 16.05.180 does not apply when evidence is observed in plain view. The supreme court reasoned that when an officer observes objects in plain view (assuming the officer has

committed no trespass to obtain that view), the officer does not conduct a "search" within the meaning of the search and seizure clause, and thus the statute does not govern the officer's actions.

■ We reject Mackelwich's interpretation of the statute for two reasons. First, it is inconsistent with the statutory history; second, it leads to unreasonable results.

Since 1925, AS 16.05.180 and its various predecessor statutes have granted officers enforcing fish and game laws the authority to conduct warrantless searches as long as the search was supported by "reasonable cause"—or, as AS 16.05.180 now puts it, as long as the search "is reasonable". Because the pre-statehood versions of the statute did not impose special procedural requirements on the officers conducting the search, it is fairly clear that those pre-statehood versions of the statute were intended to extend the authority of officers enforcing the fish and game laws. The statute was a legislative attempt by Congress to bestow authority on government officials to conduct fish and game searches without a warrant.

Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution protect against "unreasonable searches and seizures". Construing this phrase, both the United States Supreme Court and the Alaska Supreme Court have declared that, absent the consent of the person in control of the property, a warrantless search is *per se* "unreasonable" unless it falls within "certain carefully defined" exceptions to the warrant requirement. *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930, 935 (1967); *Woods & Rohde, Inc. v. Alaska Dept. of Labor*, 565 P.2d 138, 149, 151 (Alaska 1977). Given these constructions of the federal and state Constitutions, there is obviously some question as to whether the legislative branch of government has the authority to declare that certain searches may be conducted without a warrant. *See Woods & Rohde,* 565 P.2d at 150–52 (striking down a statute that authorized warrantless inspections of workplaces to investigate employers' compliance with the Alaska Occupational Safety and Health Act; the court held that such warrantless inspections violated the search and seizure clause of the Alaska Constitution).

■ However, in the context of the present appeal, it is only necessary to identify the legislative purpose behind the statute; it is not necessary to decide whether that purpose is constitutional. We conclude, from the legislative history, that the purpose of the statute was to expand the government's authority to conduct warrantless searches for evidence of fish and game violations. The government already had the authority to conduct warrantless searches by consent. Thus, the statute must have been intended to address instances in which the person in charge of the property had not consented to the search—to confer the authority to conduct warrantless searches when there was no consent.

Given this legislative purpose behind the earlier versions of the statute, we conclude that the limitations written into earlier versions of the statute (the list of specified places and objects that might be searched without a warrant) did not restrict government officers' ability to conduct other warrantless searches with the consent of the person in charge of the property. Rather, these statutory limitations applied only when there was no consent for the search.

The current version of the statute, AS 16.05.180, contains different limitations on warrantless searches. The current statute no longer limits the places or objects that may be searched without a warrant, but it does impose procedural requirements on warrantless searches—requiring written advance notice of the reason for the search, and a receipt for any objects seized. Again, however, we interpret these limitations to apply only to warrantless searches that depend upon the statute for their justification. Consent searches are lawful without reference to AS 16.05.180, and we therefore conclude that the procedural requirements contained in AS 16.05.180 *do not apply to consent searches.*

Mackelwich argues against this conclusion by asserting that there is a different purpose behind the notice requirement contained in AS 16.05.180. He argues that the notice requirement was intended to ensure that the power of warrantless search would not be misused: by requiring officers to make a contemporaneous written record of the reason for the search (before the search is conducted), evidence uncovered during a war-

rantless search can not be used to justify the search after the fact.

We agree that Mackelwich has identified a plausible purpose for the written notice requirement. His interpretation of the statute is, however, inconsistent with the supreme court's decision in *Nathanson* (discussed above), where the court held that officers need not comply with the written notice requirement if the person in charge of the property is not present and it would be unreasonable to delay the search. 554 P.2d at 459–460. If the purpose of the written notice requirement were to ensure the creation of a contemporaneous memorandum of the reason for the search, this purpose would seemingly apply all the more forcefully when the person in charge of the property is not present to speak with the officers. Yet the court in *Nathanson* reached a different conclusion.

Moreover, even assuming that the legislature saw a value in requiring officers to write down, in advance, their reason for conducting a warrantless search, the fundamental question still remains: Did the legislature intend this notice requirement to apply to all warrantless searches conducted to investigate fish and game violations? Or did the legislature intend instead for the requirement to apply only when the warrantless search would not be authorized but for the statute?

If the notice requirement applies only to warrantless searches that would not be authorized absent AS 16.05.180, then the rationale behind the notice requirement has considerable force. It would be reasonable for the legislature to grant an expanded power to conduct warrantless searches, but then condition the exercise of that power on observance of additional procedural safeguards (such as the written notice requirement).

However, if we accept Mackelwich's interpretation of the statute—that the notice requirement applies to any and all warrantless searches conducted for fish and game purposes, even when those searches are justified

by a recognized exception to the warrant requirement—then it is much harder to come up with a rationale for the notice requirement. Mackelwich offers a plausible explanation of why the legislature might, as a matter of policy, want officers to give written notice of their grounds for conducting a warrantless search. But this policy would seemingly apply to any and all warrantless searches. Mackelwich offers no convincing explanation of why the legislature would want to enforce this notice requirement only upon officers conducting a warrantless search to investigate a fish and game violation, and to exempt all other warrantless searches from the requirement.[4]

Indeed, there are sound policy reasons for not construing the statute as Mackelwich suggests. Under Mackelwich's interpretation, the applicability of AS 16.05.180 and its requirement of written notice would hinge on the subjective motivation of the officer conducting the search. The same law enforcement officer could conduct two warrantless searches, each of exactly the same degree of intrusiveness and scope, and the procedural requirements governing the two searches would depend on what the officer had in mind when he conducted the search. If the officer intended to investigate a potential fish and game violation, the notice requirement would apply. If the officer intended to investigate any other type of criminal offense, the notice requirement would not apply.

The facts of Mackelwich's case illustrate the problem with such a rule. Mackelwich argues that the troopers were bound by the notice requirement of AS 16.05.180 because they were investigating a moose kill. The State responds that, even though this was part of the reason for the search, the troopers were also investigating the second part of the tip—the information about drugs. Thus, the State argues, AS 16.05.180 should not govern this case because the troopers had an independent motivation for the search.

---

4. Mackelwich argues that, had the troopers prepared a written notice of their reason for searching his property, the superior court would not have had to resolve the conflicting testimony regarding whether Mackelwich and Healy consented to the entry upon that property. This contention appears dubious. Even if the troopers had written down their reason for wanting to search Mackelwich's property, this writing would not have resolved the question of whether Mackelwich consented to the search.

We believe that the arguments of both parties are misguided. We have repeatedly held that the propriety of a search or seizure is not judged by the subjective intentions of the officer, but rather by an objective legal analysis of the facts. *See Rogers–Dwight v. State*, 899 P.2d 1389, 1390 (Alaska App.1995); *Beauvois v. State*, 837 P.2d 1118, 1121–22 & n. 1 (Alaska App.1992). It would run counter to this rule of law if we were to hold that an officer's subjective reason for conducting a warrantless search determined the applicability of AS 16.05.180.

For all of the foregoing reasons, we reach the following conclusions:

First, AS 16.05.180 was intended to expand the authority of law enforcement officers to conduct warrantless searches when investigating fish and game violations. The purpose of the statute is to grant officers the authority to conduct warrantless searches even when the circumstances would not support any of the recognized exceptions to the warrant requirement.

Second, the procedural requirements of AS 16.05.180 apply only to those warrantless searches whose legality rests on the statute—searches that do not fit within any other recognized exception to the warrant requirement, and that would be illegal but for the statute. Even though the troopers in this case were investigating a fish and game violation, Mackelwich consented to the search of his property. Consent searches are a recognized exception to the warrant requirement. Thus, AS 16.05.180 did not apply to the search of Mackelwich's property.

The superior court properly denied Mackelwich's suppression motion. Mackelwich's conviction is therefore AFFIRMED.